IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, § § § Plaintiff, § and § § CHARLES HICKMAN, § § Intervenor Plaintiff, § v. § § COMMERCIAL COATING SERVICE, § INC., § § Defendant, § and § § JOHN WRUBLEWSKI, § § Intervenor Defendant. § | Civil Action No. H – 03 – 3984 |

## MEMORANDUM AND ORDER

This is an employment discrimination suit brought by the Equal Employment Opportunity Commission ("EEOC" or "Plaintiff"), on behalf of Charles Hickman ("Hickman" or "Intervenor") (collectively "Plaintiffs"), against Commercial Coating Service, Inc. ("CCSI" or "Defendant") for claims of hostile work environment and constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  Hickman intervened, bringing claims against CCSI for race discrimination under the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code § 21.001 et seq., and 42 U.S.C. § 1981; intentional infliction of

emotional distress; negligent hiring, supervision, and retention; assault and battery; and false imprisonment.[1] CCSI filed a Motion for Summary Judgment (Doc. #42) on all claims.

## I.   FACTS[2]

Hickman is a black African-American who worked at CCSI for approximately six months.[3] During his time at CCSI, Hickman was called "nigger," "blackie," "chongo" ("gorilla" in Spanish), "mayate" ("nigger" in Spanish), and various other epithets. The comments were made by supervisors[4] and co-workers alike on a daily basis. Of the over 100 employees at the CCSI facility in Conroe, Texas, Hickman was the only black African-American employee.

Hickman was also subjected to physical taunting and tacit threats while at work. In addition to referring to him in a disparaging way, Oscar Badillo, one of Hickman's supervisors, exposed his penis and placed it on Hickman's buttocks (hereinafter referred to as the "Sexual Incident"). During Hickman's employment at CCSI, a noose was fashioned and hung over a piece of equipment in the workplace, in full view of everyone. The harassment culminated in Hickman being choked in the bathroom with the noose (hereinafter referred to as the "Choking Incident").

Defendant John Wrublewski, a co-worker and ex-convict with alleged ties to white supremacist groups, took the noose and told Kevin Perry, another of Hickman's supervisors, that he was looking for Hickman and would be waiting for him in the bathroom. When Perry saw Hickman, he directed Hickman to the bathroom and indicated that someone was waiting for him. Upon entering the bathroom, the noose was placed around Hickman's neck and he was choked.

---

[1] Hickman also brings claims against John Wrublewski, but those claims are not at issue here.
[2] The crux of CCSI's argument is that it cannot be held liable for the actions of its employees. CCSI does not dispute that racial incidents occurred, only that it is not responsible for them. Therefore, the following is a very brief recitation of the facts, which are largely undisputed.
[3] Hickman was first assigned to work at CCSI through a temporary staffing company, then was hired on as an employee.
[4] CCSI argues that none of the men who participated in the racial harassment of Hickman were supervisors.

As Hickman struggled to free himself from the noose, other employees ran into the bathroom. With the help of another employee, Hickman removed the noose, and then proceeded to fight with Wrublewski.

Shortly after the Choking Incident, Hickman resigned from CCSI. He filed an EEOC complaint. The EEOC sued and Hickman intervened. CCSI now moves for summary judgment on all claims.

## II.   PRELIMINARY MOTIONS

The parties have filed several motions relating to summary judgment evidence. Having considered all the arguments and relevant legal standards, the Court finds and holds that Plaintiff's Motion for Leave to Amend Its Response to Include a Supporting Affidavit (Doc. #67) is **GRANTED**; Intervenor's Motion to Strike Summary Judgment Evidence (Doc. #54) is **DENIED**; and Defendant's Objections to Plaintiff's and Intervenor's Evidence and Motion to Strike Same (Doc. #60) is **DENIED**.[5]

## III.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotation omitted). Evidence is construed in the light most favorable to the non-moving party. *Id.*

---

[5] In deciding Defendant's Motion for Summary Judgment, the Court did not consider any of the criminal offense records attached to Plaintiff's Response to Summary Judgment.

"[A] complete failure of proof concerning an essential element of [Plaintiffs'] case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for Defendant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If Defendant shows that there is a lack of evidence to support Plaintiffs' case, Plaintiffs "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Kee*, 247 F.3d at 210 (quotation omitted).

## IV.   CLAIMS ASSERTED BY THE EEOC AND HICKMAN

### 1.   Hostile Work Environment

Plaintiffs claim that Hickman was subjected to a hostile work environment.[6] To succeed on a claim of hostile work environment, Plaintiffs must show that Hickman was subjected to such severe or pervasive discriminatory conduct that it created an objectively hostile work environment. *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000). A prima facie case consists of five elements: (1) Hickman belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) CCSI knew or should have known of the harassment and failed to take prompt remedial action. *Celestine v. Petroleos de Venez., SA*, 266 F.3d 343, 353 (5th Cir. 2001). Plaintiffs need not show the fifth element where the harassment was allegedly committed by a supervisor. *Id*. "Once the plaintiff makes the four-part showing that they have been harassed by a supervisor, the 'employer is subject to vicarious liability to a

---

[6] The hostile work environment and constructive discharge claims, asserted by the EEOC under Title VII, and by Hickman under the TCHRA and § 1981, require the same analysis and therefore will be reviewed together. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 280 (5th Cir. 2004) ("When applying the TCHRA, we consider the analogous federal provisions contained in [Title VII]."); *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (applying the same analysis to a claim of race discrimination brought under § 1981 that is applied to racial discrimination claims brought under Title VII).

victimized employee' for the supervisor's conduct." *Id*. (quoting *Faragher v. City of Boca Raton*, 524 U.S.775, 807 (1998)).

CCSI does not dispute that the first four elements of a prima facie case of hostile work environment have been met. CCSI contends only that Plaintiffs cannot prove the fifth element, which CCSI asserts must be shown because none of the harassers were supervisors. CCSI's argument is unpersuasive.

Plaintiffs allege, and CCSI does not contest, that a number of CCSI employees engaged in creating a racially hostile work environment. The allegations include Badillo's referring to Hickman using racial slurs on a daily basis, and Perry's involvement in the Choking Incident by directing Hickman to the bathroom, where he knew Wrublewski was waiting for Hickman with a noose. Badillo was involved even more directly in the Sexual Incident. Despite Defendant's preposterous argument that neither Perry nor Badillo were "supervisors," but rather "leadmen" or "foremen," the record is replete with facts showing that both men were in supervisory positions.

In addition to the fact that Paul Scarborough – then a manger and now a general manager at CCSI – referred to the two men as "supervisors," Badillo and Perry clearly exercised supervisory functions: they were responsible for the employees who worked underneath them; had the authority to stop their employees from engaging in "horseplay;" served as liaisons between the work crew and upper management; and could fire workers – subject to approval by Scarborough. Because the hostile work environment was allegedly created in part by supervisors, Plaintiff need not prove the fifth element of a prima facie case. *See Faragher*, 524 U.S. at 807 ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.").

### 2. Constructive Discharge

CCSI argues that Plaintiffs cannot meet the heavy burden of showing that Hickman was constructively discharged. To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign. *Pa. State Police v. Suders*, 124 S. Ct. 2342, 2354 (2004). As the Fifth Circuit has articulated:

> [The employee's] resignation must have been reasonable under all the circumstances. Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

*Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

Plaintiffs contend that Hickman was constructively discharged due to badgering, harassment, and humiliation by CCSI that was calculated to encourage Hickman's resignation. Although a greater degree of harassment must be present than that required for a hostile environment claim, Plaintiffs need not show that CCSI imposed these intolerable working conditions with the specific intent to force Hickman to resign. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004).

Plaintiffs have clearly created an issue of material fact as to whether Hickman was constructively discharged. Hickman endured months of abuse while working at CCSI, which culminated in the Choking Incident; this pattern of harassment and humiliation was created and continued by co-workers and supervisors alike. The Court finds and holds that there is sufficient

6

evidence to show that a reasonable person would feel compelled to resign after experiencing the treatment that Hickman was subjected to; summary judgment on this claim is inappropriate.

## V. HICKMAN'S STATE LAW CLAIMS

### 1. Intentional Infliction of Emotional Distress

CCSI contends that Hickman's claim for intentional infliction of emotional distress must be dismissed because it is a "gap-filler" tort, which cannot be used when statutory remedies are available. The Texas Supreme Court has made it clear that "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). *See also Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Although other available remedies may not explicitly preempt the tort, they leave no gap to fill. *Creditwatch*, 157 S.W.3d at 816. As long as another existing statutory or common law remedy is available to Hickman for the behavior underlying his intentional infliction of emotional distress claim, the claim will fail.

The offensive behavior that Hickman complains of includes the Choking Incident and the Sexual Incident. Title VII, the TCHRA, and the common law theory of assault are available to Hickman to seek redress for this behavior; whether Hickman actually succeeds on these claims, or even asserts them, is immaterial. *See Hoffmann-La Roche*, 144 S.W.3d at 448 ("If the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim."). Because there are statutory and common law remedies available to Hickman, his claim for intentional infliction of emotional distress is dismissed.

**2.     Negligent Hiring, Supervision, and Retention**

CCSI next alleges that Hickman's claim for negligent hiring, supervision, and retention is barred by the exclusive remedy provision of the Texas Workers' Compensation Act. Tex. Lab. Code Ann. § 408.001 (Vernon 2004). The parties agree that *Walls Regional Hospital v. Bomar*, 9 S.W.3d 805 (Tex. 1999), provides the controlling case law, but disagree as to how it applies to the facts of this case. At issue in *Walls* was whether a claim for negligent hiring, supervision, and retention of a physician who sexually harassed female nurses at work was barred by the Texas Workers' Compensation Act. The Texas Supreme Court stated:

> The Workers' Compensation Act provides the exclusive remedy for employees' injuries sustained in the course of their employment, at least if the injuries are compensable under the Act. Some injuries are not compensable, among them one that arose out of an act of a third person intended to injure the employee because of a personal reason and not directed at the employee as an employee or because of the employment – the so-called "personal animosity" exception. . . . [T]he purpose of the "personal animosity" exception is to exclude from coverage of the Act those injuries resulting from a dispute which has been transported into the place of employment from the injured employee's private or domestic life, at least where the animosity is not exacerbated by the employment. Whenever conditions attached to the place of employment or otherwise incident to the employment are factors in the catastrophic combination, the consequent injury arises out of the employment.

9 S.W.3d at 806-07 (footnotes and quotations omitted).

The court held that the hospital was entitled to judgment as a matter of law because the plaintiffs' injuries did not fall within the "personal animosity" exception. *Id*. at 807. In reaching this conclusion, the court pointed out that the plaintiffs asserted that they were harassed while engaged in their work; the plaintiffs did not allege that the physician ever accosted them outside of the hospital; the plaintiffs did not contend that the physician came to the hospital because they were there; and the plaintiffs stated that they were harassed by the physician because they happened to be at work at the same time he was. *Id*. The court reasoned that these factors

demonstrated that the plaintiffs' problems with the physician were not transported into the place of employment from their private or domestic lives, and that "'[c]onditions attached to the place of employment' were not only 'factors in the catastrophic combination' that led to plaintiffs' injuries, they were the exclusive setting for the harassment." *Id*.

In the present case, Hickman asserts that he was harassed while engaged in his work; he does not allege that he was ever harassed by any CCSI employee outside of the workplace; he does not contend that any of his harassers began working at CCSI because he worked there; and the summary judgment evidence shows that Hickman was harassed by his co-workers and supervisors because he happened to be at work at the same time they were. Because the workplace was the exclusive setting for the harassment, and because there is no evidence that Hickman's problems with CCSI employees were transported to the workplace from his private or domestic life, Hickman's injuries do not fall within the "personal animosity" exception. Hickman's claim for negligent hiring, supervision, and retention is therefore barred by the Texas Workers' Compensation Act.

    3.    **Assault and Battery**

Hickman seeks to hold CCSI vicariously liable for the assault and battery committed by Wrublewski. To impose liability upon an employer for the tort of an employee under the doctrine of respondeat superior, the "acts of the employee must fall within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 493 (Tex. App. – Fort Worth 2002, no pet.). "An employee's tortious conduct is within the scope of employment when that conduct is of the same general nature as that authorized or incidental to the conduct authorized." *Id*. at 494. "As a general rule in Texas,

9

an employer cannot be vicariously liable for the intentional torts of assault or battery perpetrated by its employee because such acts are not ordinarily within the course and scope of an employee's authority or employment." *Id*.

Hickman has not presented any evidence to show that either the Choking Incident or the Sexual Incident, involving Wrublewski and Badillo respectively, comprised the kind of conduct that these men were authorized to perform in furtherance of CCSI's business. The fact that these incidents occurred in the workplace during work hours does not mean that they were in the scope of employment. CCSI is entitled to summary judgment on this claim.

### 4. False Imprisonment

For the same reasons that CCSI cannot be held vicariously liable for Wrublewski's assault and battery, it cannot be held vicariously liable for Wrublewski's alleged false imprisonment of Hickman.

## VI. CONCLUSION

Plaintiff's Motion for Leave to Amend Its Response to Include a Supporting Affidavit (Doc. #67) is **GRANTED**. Intervenor's Motion to Strike Summary Judgment Evidence (Doc. #54) is **DENIED.** Defendant's Objections to Plaintiff's and Intervenor's Evidence and Motion to Strike Same (Doc. #60) is **DENIED**.

Defendant's Motion for Summary Judgment (Doc. #42) is **GRANTED IN PART** and **DENIED IN PART**. The EEOC and Hickman have clearly demonstrated that there are genuine issues of material fact on the claims of hostile work environment and constructive discharge; summary judgment on these claims is therefore **DENIED**. CCSI has shown, however, that it is entitled to judgment as a matter of law on Hickman's claims for intentional infliction of

emotional distress; negligent hiring, supervision, and retention; assault and battery; and false imprisonment. These claims against CCSI are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

SIGNED this 31st day of May, 2005.

 

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**